We will proceed with the fourth case, Surgery Center v. American Physicians Assurance Corporation. Good morning, Your Honors. May it please the Court, my name is Michael Brook and I represent the Surgery Center at 900 North Michigan Avenue. The appellant in this case and the plaintiff in the court below. This is our appeal from a Rule 50 judgment as a matter of law that was entered after the close of plaintiff's presentation of its case to a jury in an insurance bad faith case. Of the required elements in our case, the appellee contends that we failed to prove only one element and that's the reasonable probability of a finding of liability against the insured within the duty to settle element. Therefore, the central question presented in this court is whether the Surgery Center has presented sufficient evidence for a reasonable jury to conclude that there was a reasonable probability of a finding of liability when APA, the insurer, refused to settle the underlying Tate case. What do the Illinois courts say about the circumstances here where even if we accept your argument that a duty to defend, I'm sorry, a duty to settle arguably existed or at least the facts could support that, does the insurer breach that duty if the policyholder, the insured, insists that the case be taken to trial? Well, in this case, the insured did not insist that the case be taken to trial. The evidence in that regard was from I think three or four years prior to the actual trial in this case. There were really two parts to the underlying case. One is pre-appeal and the other was post-appeal, post-remand. In 2007, the insured was voicing some beliefs about how to handle the case. After that, the case was dismissed, appealed, and sent back. From that point forward, there's no evidence of what the insured's desires were, and that was part of the problem in this case, is the insured was never asked. The evidence is that the policy, when the demand was made, it was sent to the insured and then rejected by the insurer without getting the insured to weigh in on it. I think that that was part of what was contested at trial, is what the insured's wishes were, and I'd submit that the evidence is that nobody ever asked during the relevant time period, and they should have. Did you litigate this as a bad faith failure to notify the insured of the existence of a conflict of interest? I read the theory of the case, both below and on appeal, to be simply a bad faith refusal to settle or failure to settle, not a bad faith failure to notify of a conflict. Well, the conflict is an issue in the case, because had the insured been provided with independent counsel, as they should have, then they would have gotten the advice that they should have received. So that is part of the bad faith, I believe. But the claim wasn't litigated that way, though. It was litigated as, and the theory of the case was that this is a bad faith failure to settle. Well, the central theory is that it was a failure to settle, sure. And that's... And we don't even know if the Illinois courts would recognize another species of bad faith claim consisting of the allegation that there was a bad faith failure to notify of the potential for a conflict between insurer and insured, and provide the details of that and supply outside counsel or counsel specifically for the insured. This court has recognized that in the Wegman case. Right, I'm asking if the Illinois courts have adopted this court's interpretation of the Illinois court. Right. Which was a little aggressive. So that's part of it. Not uncommon. Is it a fair reading? Did Wegman fairly read the Illinois cases that there's this sort of independent species of bad faith claim that consists of bad faith failure to notify of a conflict and the gravity of the conflict and the insured's exposure to an excess judgment and give a warning or disclose that we'll appoint counsel for you at our expense, et cetera, much in the nature of a code requirement? I'm not sure what you mean by a code requirement, but I believe Wegman was correctly decided. And that when an insurer is faced with an excess potential, a situation that could devastate their business or their life through an adverse judgment, they go out and they buy insurance. The insurer has a duty to treat them fairly and treat their interests equal to their own. And whether it advise them of a conflict of interest, advise them of exposure, advise them of the right to independent counsel, all those things are part and parcel with that. So I believe that Wegman was correctly decided and in that case there was a duty to disclose. And Illinois courts impose that sort of checklist set of requirements on the insurer in the case of a conflict, what the notice must consist of, otherwise there's a bad faith claim. Well, I know that Illinois courts in the case of conflict, the insurer is entitled to independent counsel. The insurer can always waive the conflict, so that's something, but it has to be a knowing waiver. It has to be an informed waiver. But even if the Illinois cases support that kind of a bad faith claim, it wasn't litigated that way in this case. The communications between insurer and insured were part of the fact pattern, but the theory of the case wasn't bad faith failure to notify, it was bad faith failure to settle. Mainly bad faith failure to settle, yes. And the evidence presented in this case is of the liability, the reasonable probability of liability was overwhelming. The surgery center is a surgery center, outpatient surgery. Gwendolyn Tate went there for a laparoscopic surgery, supposed to be a day surgery. She suffered a bowel perforation and was rendered a quadriplegic. She sued the doctor who performed the surgery and she also sued the surgery center for the discharge. The insurer recognized and admitted that the degree and injury and sympathy of the plaintiff are factors that feed into liability. Ms. Tate's injuries was horrific. She was a 34-year-old healthy woman when she walked in for surgery and came out a quadriplegic. She was sympathetic, she was a good witness, was considered a sad case, was considered by APA as a case that they had to be very careful with because of the risk it posed. APA also says we had a lot to be thankful for when they obtained summary judgment the first time because Tate was a sympathetic witness, quadriplegic, the case was pending in Cook County which is another liability factor. It's a venue known for high verdicts and APA also said another judge who is not as smart or as brave may not have ruled that way. They also classified the case as severe, 9 out of 10 severity. It was a high exposure case. The nurses did not comply with the surgery center's own written policies and standards. The discharge nurse was a poor witness. The boyfriend who accompanied Ms. Tate to the surgery was unavailable because he was deceased and so the only witness that the surgery center was going to present at trial was Nurse Schwellness who was an expert who performed poorly in her deposition and defense counsel said she could have killed her because of her poor performance. Before your time runs out, perhaps you could address the meaning of reasonable probability in this area of the law. The Illinois court's requirements for this kind of bad faith claim require showing of a reasonable probability of liability on the part of the insured and a reasonable probability of an excess judgment. Correct. And there's a fight in this case about what that means. And there shouldn't be because the Illinois Supreme Court was clear in the Boyd case on what reasonable probability meant or at least what it didn't mean and Boyd juxtaposed reasonable probability with preponderance of the evidence and found the two are different, clearly different and it's a different standard between the two. And so the Powell case from the Illinois appellate court incorrectly found that reasonable probability meant more likely than not and that's our argument here. And Boyd was correct in its conclusion, that was followed by this court in the Schaefer case, it's also consistent with as we pointed out legions of other decisions from the U.S. Supreme Court, the Illinois Supreme Court and elsewhere that all conclude that reasonable probability is a lesser standard of proof than preponderance of evidence. And that makes sense, just looking at the words reasonable and probability. It's a probability, it must be a reasonable probability. So it's more than a mere possibility, it can't just be based on speculation but it's a sliding or more elastic standard. If they meant preponderance of the evidence or more likely than not, then the Illinois Supreme Court would have said that in Haddock. And it's particularly appropriate in cases such as this where you're looking at both liability and damages. That's what this court has done when evaluating the value of a case, that's what APA does when it evaluates the exposure or the value of a case. Basically it multiplies liability times damages to come out with the value. Those two things could differ. You could have a high, high liability case, maybe a moderate, a high damages case and a moderate liability case. And in that instance it would present... Was such an effort made to determine ex ante the value of the lawsuit? By APA? They did. Their reserves were at a million dollars. They valued it at 3.5 million dollars. No, no. I'm trying to figure out whether an effort was made to multiply the probability of success by the likely recovery in the event of success in order to get an ex ante value. And they did. We submit that they did in their reserve evaluation worksheet. It's a different question. Was such an effort made? I'm not asking how much the insurance company booked as reserves. I'm asking whether a concrete effort was made to value the litigation. By APA? By anybody. Well, that's what the insurer did throughout the case. Before it went up on appeal it valued it at 8 million dollars, maybe 10 million dollars in damages. It factored in a chance of loss to that. And after remand it did the same thing. I had reserved some time, so I'd like to do that. Thank you. Thank you, Mr. Brooke. Mr. Stamos. Good morning. James J. Stamos for the defendant at police. I'm here with my colleague, Mr. Newman, Mr. Klimek. I'd like to address, going backwards, if I may, Judge Easterbrook's question about whether there was a calculation made of value employing likelihood of success. That was done in 2004 on an old reserving form where they did use multiplied likelihood of success times the potential damages. That was no longer done. When reserves were set prior to the trial, immediately before trial, that reserve form did not implicate any aspect of liability. This was testified to. The old form was found to be not helpful, and therefore that played no part in the document used to calculate the reserves. With regard to the case as a whole, we agree. The issue before the court, the issue on trial, was should we have thought that it was more likely than not we were going to lose? Because under the Haddock case, if we thought that, in that instance, and we nonetheless went to trial, we would have been trying the case at our risk. So the burden on the plaintiff was demonstrated under Haddock where they used the phrase reasonable probability, and that phrase has been defined by the Powell Court in the appellate court as being more likely than not. Adopted by the Hanna Court when they ruled that future jury instructions have to incorporate Powell, the burden was on them to prove that we should have known, reasonable insurer would have known, that it was more likely than not we were going to lose at Tate trial. They did not attempt to prove that at trial here. They called two experts. Neither expert testified that, in his opinion, we should have known it was a reasonable probability that the case would be lost. Putting aside the standard, whether it's more likely than not or not, we believe that's the law in Illinois, but irrespective of the standard that's applied, they didn't try to prove even using the phrase reasonable probability. And when Judge Coleman, in her ruling on the motion for judgment as a matter of law, she didn't focus on more likely than not. She simply referred to reasonable probability. I don't think she used the phrase more likely than not. So in this case, they simply failed to prove that we should have known that. All of the evidence demonstrated that we had a reasonable basis to believe we were going to win the case. The principle one being, the plaintiff intended to go to trial in a medical malpractice case without an expert disclosed to testify that a deviation had happened. In our business, that's fatal. I've never seen 40, 38 years of trying these cases, I've never gone to trial with a plaintiff where they did not have a disclosed expert. Now, in their brief, I think on page 21, my opponents observed, well, there were three experts. Well, there were only three experts in the sense that there were three doctors qualified to perform their profession, but they were not disclosed witnesses under the Illinois Supreme Court Rule 213F3, disclosed to give an opinion that the nurses at our insurance facility had deviated from the standard of care. Beyond that, we had the assessment by outside counsel that it was a 90% chance we're going to win. Now, that's an aggressive number, but he reiterated it again because he reviewed the entire case and came to the conclusion not only do they have the problem of not having an expert, but the case was amorphous from the beginning. It began being an agency claim regarding the surgeon who had operated and caused this infection. Then there was a second claim that the nurses had lost a standing order and had not followed that, and that was going to be a deviation. And then there was a third claim that there were unsterilized instruments, that our nurses in our facility was responsible for the infection because the instruments weren't sterilized. When all three of those were in the case, all three of those potential claims, and the one we were most afraid of was agency because we can't control that. The surgeon's liable, then we're liable for him. That is when the president of the company wrote those emails saying, under no circumstances do I want to settle. This is a frivolous case. We all know it's serious. She was warned. There's a $10 million exposure on a couple of occasions. And then as the case evolved, the agency fell away, and then it went up on appeal. There were two issues that went up on appeal. One of them was two liability issues. One was the missing order, and the other was the sterilized instrument. When it came back down, all that remained was the missing order. So the case was stronger than it had been at the time that these demands not to settle the case were made. And in the event, the jury didn't even hear the missing order instruction. The case came to be this administrative code section that was put in at the very last second. It was a piece of the administrative code that implied that as a patient is leaving a surgical center, they have to be given discharge instructions. The plaintiff was allowed to argue that that meant you had to give the piece of paper to the person who just is still under anesthesia. Giving it to the boyfriend, which everyone acknowledges had happened, he had signed for it, that that wasn't sufficient. It was in evidence that the jurors came tumbling out of the jury room, a couple of them crying, because they felt that they had been compelled to rule in an absurd way because of this jury instruction. That's why the case was lost, not because of judgments that were made, incorrect judgments made by my client. With regard to this conflict of interest that Your Honor raised, in opening statement, they had promised the jury they were going to bring in witnesses from Hinshaw and Culbertson who had been retained after the judgment was entered. And they were going to come in and talk about what was supposed to have been done, what wasn't done, how it affected the case. They didn't call them, so the jury never heard any evidence about that, other than sort of peripheral arguments and comments about it, but none of it that tied in any way into what my client did or did not do. With regard to the standard, more likely than not there is a debate about that in this case, I would simply say that the Supreme Court in Haddock didn't define that term. The Powell Court did define the term, did accept the term. It's the common standard we use, more likely than not. Looking at a bad faith case in terms of it being a negligence case is appropriate, because when you look at the IPI instructions, one of the instructions that the Haddock Court did not find inappropriate is the definitional one. And it says basically you can try this case as a bad faith case or as a negligence case. This is just a negligence situation. So applying more likely than not, which is something that we, you know, in this courthouse and all the courthouses, that's the standard we use for virtually everything that's not a criminal or fraudulent matter, is not in any way inappropriate. I think that when you look at the, and there's no basis under the AAR case for this court to overrule those, to refuse to give credit to those appellate cases. There are two of them, and I can promise you they were very hotly contested as to what the standards should be and whether Powell was appropriate. I tried the Haddock case and argued the appeal. I mean, that's what the whole thing was about, was should that jury instruction, the ruling was that's an inappropriate instruction because it does not properly employ the holding of Powell, and the only holding of Powell that matters is more likely than not. And there's no appellate case law holding otherwise, as I understand the landscape. There's absolutely not. There's not. And I think, you know, if you look at the other cases, I mean, I ask you not to explore this, but if you were to explore this, I think what you'd see is that, putting aside for a moment that the criminal cases are in different contexts, all of the judgments that are made, for example, in probable cause, ineffective assistance of counsel, the other ones, those are all judge decisions. Those aren't jury decisions. Those are cases that implicate constitutional issues and serious lawyer thinking as to is this appropriate or not, protecting the constitutional rights of defendants. The only case where a jury would be involved, where preponderance is not involved, is the Boyd case, which counsel cites. But the Boyd case is a spoliation case. And in that case, the court felt the need to explain why they weren't using what would otherwise be the standard, which is more likely than not, because it's a two-element claim. The first is that you have to show by preponderance that the absence of the evidence could cause you to lose the case, and then you have the second element, which is that there was a reasonable probability that you would have won the case if you had the evidence, and the court said, well, if we require that to be proved by preponderance, that would imply that you had sufficient evidence to prove the case in the first place, which would negate the first count. So the only case that we're aware of that uses anything other than, more likely than not in this situation, is the spoliation case because of the unique circumstances there, and the court went out of their way to explain why that was. And I think beyond that, the equal consideration, when you look at, more likely than not, makes sense because insurance companies owe the insured only equal consideration in deciding whether or not to settle. And many people are surprised to learn that the first time they read that the insurance company doesn't owe above that, but they don't, because insurance companies have to stay in business. They can't settle every case. And that cries out for 50-50, and if it's more likely than not we're going to lose, then we are gambling. But if you can't prove that it's more likely than not we're going to lose, we made that judgment, then we are not gambling, and we can't be held liable. So we ask that you affirm the judgment of the district court. I think the plaintiffs simply failed to prove their case, and in many respects didn't try to prove the case they needed to prove. Thank you. Thank you, Mr. Stavis. That points to the problem, and we put it in our brief, of the $100 million exposure case and 25% potential liability and $1 million of insurance. You're faced with, in that case, a $25 million exposure on a case where there's a chance of losing of 25%. That is a situation that cries out for a settlement if you are insured with that $1 million policy. That is because by going to trial, you're risking devastation. And in that instance, such as that, that's where you want the insurance that you bought to step up and protect you. We submit that's why the Illinois Supreme Court chose the more flexible reasonable probability standard. When Powell said reasonable probability is the equivalent of more likely than not, it cited the Haddock case. And I've not seen any case other than Hanna that follows the Powell holding, not seen any case that says reasonable probability means more likely than not. So where Powell got that from, who knows? Because what existed at that time was void and all the other decisions out there on what reasonable probability means. He said that we did not have an expert. We had the claims evaluation form that showed a 50% chance of losing. That's a fair reading of that form. Our expert, Mr. Martyr, echoed that. Judge Coleman applied a 50-50 standard when she entered her ruling. So she applied the more likely than not or preponderance standard. That's the incorrect standard here. Also, he spent a lot of time talking about the trial. The question is judged at the time of the policy limit demand. What do you know at that time? If the trial turned out differently or if the, you know, we talk about foreseeability. The injury is the type that should be foreseen. In this case, it was. It's an adverse judgment. The way it happened doesn't really matter. And so the conduct is judged at the time that the demand was refused, and that was in May. And that's when all the sorted information that we put in our briefs existed there and the risk potential was there. They put up a million dollars of their own money. They booked it as an expense on their books. They fully expected to pay that money and instead gambled by going to trial, which is a classic bad faith, failure to settle situation. It's a classic breach of fiduciary duty to the insured and to treat them fairly and equally. And they should have been more forthright and should have settled the case. So there's nothing further. Thank you. All right, thank you, Mr. Burdick. Thanks to all counsel. The case is taken under advisement.